**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARK HOLMES**, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil Action No. 08-545** |
| | ) | |
| **MICHAEL J. ASTRUE**, | ) | **Judge Nora Barry Fischer** |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY,** | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I.  INTRODUCTION

Plaintiff, Mark Holmes ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g),

seeking review of the final determination of the Commissioner of Social Security ("Commissioner")

denying Plaintiff's application for supplemental security income ("SSI") under Title XVI of the

Social Security Act, 42 U.S.C. §§ 1614(a)(3)(A). This matter comes before the Court on cross-

motions for summary judgment filed by the parties pursuant to Federal Rule of Civil Procedure 56.

The record has been developed at the administrative level. For the following reasons, the

Commissioner's Motion for Summary Judgment [10] is denied and Plaintiff's Motion [8] is denied,

in part and granted, in part in that the decision of the Administrative Law Judge is vacated and

remanded for further proceedings consistent with this opinion.

### II.  PROCEDURAL HISTORY

On January 9, 2006, Plaintiff filed his application for SSI, alleging disability beginning April

4, 1998. (Docket No. 6 at 18, R. at 18; 227-228; 228-230); (hereinafter "R. at ___").[1]  Plaintiff's

claim for benefits was initially disapproved on April 17, 2006. (R. at 18; 217-218).  He requested

a hearing before an Administrative Law Judge ("ALJ") and a hearing was held on June 7, 2007 in

Morgantown, West Virginia.  (R. at 18; 361-385). At the hearing, Plaintiff, who was represented by

counsel, appeared and testified. (R. at 18; 361-385). On the date of the hearing, Plaintiff was 45 years

of age and had completed the eleventh grade. (R. at 25; 365).  Dr. Larry Ostrowski,[2] an impartial

vocational expert, also testified. (*see* R. at 382).

By decision dated August 27, 2007, the ALJ denied Plaintiff's claim for SSI benefits,

concluding that Plaintiff had not been under a "disability" within the meaning of the Social Security

Act. (*See* R. at 18-27).  Thereafter, Plaintiff requested a review of the ALJ's decision by the Appeals

Council.  (R. at 359-360).  Plaintiff's request for review was denied on April 1, 2008, thereby

making the ALJ's decision the final decision of the Commissioner. (R. at 7-10). Plaintiff filed the

instant action with this Court on April 18, 2008, seeking judicial review of the Commissioner's

decision. (Docket 3 at 1). Plaintiff's Motion for Summary Judgment was filed on September 30,

2008 (Docket No. 8), followed by the Commissioner's Motion filed on October 20, 2008. (Docket

No. 10).

III.    FACTS

A.    General Background

---

[1]

The ALJ's opinion states that Plaintiff filed his application for SSI on January 9, 2006.  (R. at 18).
However, the record reflects that Plaintiff filed his application for benefits on January 12, 2006, with a protective
filing date of January 9, 2006.  (R. at 6, 230).

[2]

Dr. Larry Ostrowski is the vocational expert named in the record (R. at 376); however, the ALJ's opinion
refers to Larry A. Bell in the Jurisdiction and Procedural History section. (R. at 18).

2

Plaintiff was born on August 8, 1961. (R. at 25). Plaintiff was forty-four (44) years old on the date that he filed his application for SSI benefits, and was forty-five (45) at the time of his hearing before the ALJ. (R. at 18). For decisional purposes, Plaintiff was considered a "younger individual" under 20 C.F.R. § 416.963. (R. at 25). Plaintiff completed eleven years of education and did not participate in any special education classes. (R. at 25, 252). Plaintiff has not completed any type of special job training, trade or vocational school. (R. at 252). However, he has worked in the past fifteen years doing heavy semiskilled work building trusses for houses. (R. at 254). In addition, Plaintiff reported doing assembly line box assembly at the medium work level using special tools and equipment, but per his hearing testimony, lighter work was done only briefly. (R. at 249). Plaintiff also reported that he tried to work in 2003 and earned some income but was fired "because [he] could not go to work due to [his] back pain." (R. at 233, 249). Plaintiff previously filed concurrent applications for Title II and Title XVI disability benefits on December 15, 2000, with a protective filing date of November 15, 2000. (R. at 63-65). Those applications were initially denied on March 23, 2001 (R. at 50-53) and then denied in a hearing dismissal decision issued on September 18, 2001 by the Honorable Barry Anderson. (R. at 216-218). In the present action, Plaintiff maintains that he is disabled due to his severe medical impairments, therefore, he is entitled to SSI benefits. (R. at 20). The Court will now review his claim.

### B.    Medical Background

The record shows that between 1994 and 1998 Plaintiff had been steadily working and earning income. (R. at 233). In April of 1998, Plaintiff injured his lower back while he was working when he tripped and got his foot stuck between a railroad and an iron table. (R. at 146).

He received treatment for this injury and thereafter continued to work but only did light duty, which resulted in increasing his pain. (*Id.*). Plaintiff was then treated by a chiropractor but continued to experience back pain and reported that his symptoms had gotten worse since the onset in April of 1998. (*Id.*). On July 7, 1998, Dr. Melvin Alberts diagnosed Plaintiff with a lumbar spinal strain, put him on medication, and ordered him to receive treatment three times a week for four weeks. (*Id.*).[3]

In January of 1999, Plaintiff was evaluated by Dr. William J. Mitchell and listed as disabled due to his back pain.[4] (R. at 168). He was seen again by Dr. Mitchell in November of 1999 for the same condition and was noted as having "paralumber muscle spasms." (R. at 161). On January 2, 2001, Plaintiff was seen by Dr. Mitchell for recurring low back pain and was noted as taking oxycontin at that time. (R. at 149-153). Dr. Mitchell listed Plaintiff as disabled again and noted that at that time Plaintiff remained "off duty" due to low back pain and intermittent swelling in the low back area. (R. at 158-160).

Still unable to return to work, on February 16, 2001, Plaintiff was diagnosed by Dr. H. Gulati has having developed chronic pain syndrome and was recommended to see a psychologist and a psychiatrist. (R. at 174). On February 20, 2001, Dr. Gulati's report was reviewed as part of Plaintiff's SSI claim and Plaintiff's allegations regarding his back pain and radicular pain

---

[3]

The Court notes that in a disability report filed by Plaintiff in January of 2006 as part his application, he stated that his weight at the time was 184 pounds. (R. at 248). In April of 1998, at the time of his injury, he weighed 155 pounds. (R. at 151). At the hearing before the ALJ on June 7, 2007, Plaintiff testified that he weighed 210 pounds. (R. at 267). Thus, since his injury in 1998, Plaintiff has gained more than 50 pounds. (Undoubtedly, this weight gain has contributed to both his back pain and development of cardiac symptoms.).

[4]

The records indicates that Plaintiff was seen by Dr. Mitchell starting in 1999 up and through 2007. (R. at 322-343).

which he claimed interrupted "even light activities of normal living" were "felt not to be credible" by the doctor. (R. at 187-188). In evaluating Plaintiff's SSI claim under Titles II and XVI, the Commissioner used these findings to determine that Plaintiff was not disabled under the rules and deny him benefits on March 23, 2001. (R. at 212). This determination was upheld by Administrative Law Judge Barry Anderson on September 18, 2001. (R. at 218).

On January 5, 2006, Plaintiff was admitted to Southwest Regional Medical Center with complaints of chest pain associated with nausea and left arm numbness and was tested for hypokalemia[5] and myocardial ischemia.[6] (R. at 251, 283). Plaintiff was examined and treated by Dr. Jayesh B. Gosai. (R. at 283-284). Dr. Gosai noted that Plaintiff was experiencing atypical chest pain "most likely secondary to excessive alcohol and smoking indulgence." (R. at 284, 314-315). Dr. Gosai did not rate Plaintiff as disabled on follow-up and found that he was drinking about twelve (12) beers a day. (R. at 283-284). He further indicated that Plaintiff had a normal EKG but that test results did show mild hypokalemia while his chest pain had resolved itself since his admission on January 5, 2006. (R. at 283). Dr. Gosai's report provides Plaintiff's past medical history as being significant for hypertension while also including a history of hyperlipidemia, spinal stenosis, herniated lumbar disc, tobacco and alcohol abuse, and most recently hypokalemia. (R. at 314). At the time of this report, Plaintiff had no musculoskeletal complaints other than chronic low back pain where he has a history of disc herniation and spinal

---

[5]

    Hypokalemia is defined as the presence of an abnormally low concentration of potassium ion circulating in the blood. Stedman's Medical Dictionary 934 (28th ed. 2006).

[6]

    Myocardial ischemia is defined as the inadequate circulation of blood to the myocardium, which is the middle layer of the heart, usually as a result of coronary artery disease. Stedman's Medical Dictionary 1001, 1271 (28th ed. 2006).

stenosis. (R. at 314). The doctor noted this chronic condition as stable. (R. at 314).

As part of the Commissioner's evaluation of Plaintiff's claim filed on January 12, 2006, in a field office disability report dated the same day, Plaintiff was interviewed over the telephone and was found not to be credible because his story allegedly kept changing during the interview. (R. at 245-246). The interviewer further noted that there were no notable signs of disability during the interview. (R. at 246).

During a subsequent follow up visit with Dr. Gosai's office on March 2, 2006, Plaintiff continued to complain of back pain. (R. at 331). Dr. Gosai's impressions on his exam of Plaintiff on March 7, 2006 were that Plaintiff had "diminished disc pace, bony spurs and changes of disc desiccation along with mild to moderate disc bulge, which is not causing significant compression of the thecal sac." (R. at 332). Plaintiff showed no signs of bony injury and there was no evidence of spinal stenosis. (R. at 332).

In a report dated April 6, 2006, Dr. Jason Rasefske found that Plaintiff had been seen infrequently for his chronic back pain, that he was not attending physical therapy and that he did not require the assistance of a device to move around. (R. at 323). He further noted that despite allegations of persistent symptoms, Plaintiff has not been prescribed medication for those symptoms. (*Id.*). Dr. Rasefske found Plaintiff's statements to be partially credible based on the evidence of record. (*Id.*). He further reported that his residual functional capacity assessment was different than the opinions expressed by Plaintiff's treating physician, Dr. Gosai, in a report dated 3/23/06 because of "inconsistenices with the totality of the evidence in Plaintiff's file." (R. at 324). He viewed some of the opinions contained in Plaintiff's reports as "an overestimate of the severity of [Plaintiff's] functional restrictions." (*Id.*). According to Dr. Rasefske, the

observations as to Plaintiff's restrictions were not consistent with all of the medical and non-medical evidence, which Dr. Rasefske concluded, rendered Plaintiff's physicians' opinions less persuasive. (*Id.*).

In the initial disability determination by the state agency dated April 17, 2006, Plaintiff's primary diagnosis was essential hypertension, while his secondary diagnosis was disorders of the back. (R. at 219). This determination was based on disability examiner Karen Matteo and Dr. Rasefske's evaluation of Plaintiff's medical history and past relevant work. (*Id.*). In a letter dated April 18, 2006, Plaintiff was informed by the Commission that his conditions relating to back pain and chest pain were not severe enough to keep him from working less physically demanding jobs than a truss builder and his claim was denied. (R. at 221).

Thereafter, on July 7, 2006, Plaintiff was seen by his orthopedic physician, Dr. Mitchell, who indicated "none" with regard to work status; however, while Plaintiff was not doing any regular work, Dr. Mitchell did not make any statement regarding Plaintiff's disability and he did not perform a functional capacity evaluation. (R. at 351-352). His diagnosis was "aggravation degenerative change in L5-S1." (R. at 352). On October 20, 2006, Dr. John Park examined Plaintiff upon the referral of Dr. Mitchell and diagnosed Plaintiff with bilateral carpal tunnel syndrome and indicated that his findings were consistent with ulnar nerve entrapment across both elbows. (R. at 329). He further noted that this was causing a functional limitation. (R. at 327-329). Plaintiff was also treated again for lower back problems with diminished disc space and spondylotic changes, bony spurs, disc desiccation with mild to moderate bulging and mild to moderate degenerative joint disease at L5-S1 with disc bulge but no stenosis. (R. at 327-329). Plaintiff's treatment was conservative as he showed no signs of disabling back discomfort. (R.

at 327).

On January 2, 2007, Dr. Mitchell found that Plaintiff was not able to lift more than five pounds from table level. (R. at 338). With regards to Plaintiff's level of movement, Plaintiff could bend forward 55 percent with pain and spasm but he had "given up on recreational activity" and was able to "self-groom." (R. at 336, 351). The record reflects that Plaintiff was last seen by Dr. Gosai in March of 2007 wherein he received a cardiology consult from Dr. Siva Kedear and he was noted as experiencing chest pain and had an abnormal stress test. (R. at 331). On March 14, 2007, Plaintiff had a left heart cathcrterization, a coronary angiography, and a left ventricular angiography. (R. at 359). The doctor performing the procedures, Dr. Kedar, concluded that there is 10 to 15% midsegmental stenosis in the left descending artery and there is 10 to 15% midsegmental stenosis in the circumflex artery. (R. at 360). On April 17, 2007, Dr. Mitchell noted that Plaintiff was still unable to do minimal household activities without increased pain and listed his work status as none. (R. at 334-335).

Plaintiff has alleged that he has been unable to work since 1998 due to his back problems and recurring chest pain. (R. at 54, 71-72). He additionally reported to the Commissioner that he was having trouble breathing and having sweats, but he has not been treated for endocrine disorders or lung disorders. (R. at 22). According to Plaintiff's medical records, his last physical therapy was in 1998 and he has had no emergency room visits or hospitalizations since he was treated for intoxication in January of 2006. (R. at 251, 323, 283-284 ). In sum, Plaintiff has alleged the following medical impairments: cardiovascular disease with some stenosis[7] and

---

[7]     Cardiovascular diseases with stenosis is a condition where the canals or orifices of heart, arteries, or kidneys constrict. Stedman's Medical Dictionary 1832 (28th ed. 2006).

history of hypertension,[8] spondylotic changes at L5-S1 with diminished disc space, bony spurs and disc desiccation[9] changes with mild to moderate disc bulge without compression of the thecal sac[10] or spinal stenosis,[11] bilateral carpal tunnel[12] and ulnar nerve entrapment.[13] (R. at 20).

## C.    Administrative Hearing

A hearing was held on August 27, 2007, in Morgantown, West Virginia, before Norma Cannon, Administrative Law Judge. (R. at 27).   At the hearing, Plaintiff appeared with the assistance of undersigned counsel, Karl E. Osterhout, Esquire. (R. at 13, 27). Plaintiff testified about his prior work experience doing heavy semiskilled work building trusses for houses in the past 15 years and assembly line box assembly at the medium work level using special tools and equipment. (R. at 25). Dr. Larry Ostrowski, a vocational expert, also testified. (R. at 26, 376). The ALJ asked Dr. Ostrowski whether jobs existed in the national economy for an individual with the Plaintiff's age, education, work experience, and residual functional capacity. (R. at 26).

---

[8]

Hypertension means high blood pressure. Stedman's Medical Dictionary 927 (28th ed. 2006).

[9]

Disc desiccation is the abnormal dryness of the spinal discs. *See* www.orthopedicquestions.com/back/9.html, last visited March 5, 2009.

[10]

The thecal sac is a sheath or capsule in the spine.  Stedman's Medical Dictionary 1970 (28th ed. 2006).

[11]

Spinal stenosis is when the orifices or canals of the spine constrict. Stedman's Medical Dictionary 1832 (28th ed. 2006).

[12]

Carpal tunnel is a passageway through the bones of the wrist wherein compression of a nerve may occur. Stedman's Medical Dictionary 2055 (28th ed. 2006).

[13]

Ulnar nerve entrapment occurs when the ulnar nerve in the arm becomes compressed causing the never to function abnormally. *See* http://orthoinfo.aaos.org/topic.cfm?topic=a00069, last visited March 5, 2009.

The doctor answered that several jobs existed in the economy, including mail clerk, sewing machine operator, document preparation jobs and table worker. (R. at 26).

### D.    Administrative Law Judge's Opinion

The ALJ concluded that Plaintiff's medically determinable impairments did not meet the requirement for receipt of SSI benefits and that Plaintiff retained the ability to perform work that existed in significant numbers in the national economy. (R. at 26). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. (R. at 23). Accordingly, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, since his alleged onset date was December 15, 2000. (R. at 26).

The ALJ issued her opinion on August 27, 2007. In the ALJ's application of the five step sequential evaluation process to determine disability pursuant to 20 C.F.R. § 416.920(a), the ALJ made the following determinations.

At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since January 9, 2006, the date he applied for SSI benefits. (R. at 20).

At step two, the ALJ found that Plaintiff was afflicted with the following "severe" impairments: cardiovascular disease with some stenosis and history of hypertension, spondylotic changes at L5-S1 with diminished disc space, bony spurs and disc desiccation changes with mild to moderate disc bulge without compression of the thecal sac or spinal stenosis, bilateral carpal tunnel syndrome and ulnar nerve entrapment. (R. at 20). However, the ALJ concluded that

Plaintiff's report of severe muscular pain with some abnormality is not consistently demonstrated in the evidence of record. (R. at 20).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations. (R. at 21). The ALJ stated that Plaintiff's "cardiac and musculoskeletal profiles support better functioning longitudinally without the findings that would allow for disability at this step." (R. at 21). Despite the claimed limitations, the ALJ opined that the medical findings showed "far better range of motion, ambulatory ability and other signs" than were admitted by Plaintiff. (R. at 21). Thus, the ALJ concluded that none of the cardiovascular, musculoskeletal or neurolodical impairments was demonstrated to the degree needed for showing disability at this step. (R. at 21).

Proceeding to step four, the ALJ concluded that Plaintiff had the following residual functional capacity:[10]

> [Plaintiff] has the residual functional capacity to perform light work with no more than occasional postural movements except with no climbing of ropes, ladders, or scaffolds, with avoidance of hazards such as dangerous moving machinery or unprotected heights, with avoidance of extremes of cold, with the ability to sit or stand every 15 to 20 minutes, and with the ability to be off tasks up to 10 percent of the work period and tardy or absent up to two days per month.

(R. at 21). The ALJ also determined that although Plaintiff had previously held a few jobs, he had never worked long enough or earned enough at his jobs for the work to constitute

---

[10]

A claimant's residual functional capacity is a determination of what the claimant can do despite his or her limitations. 20 C.F.R. §§ 404.1527(a)(2), 404.1545(a)(1), 416.927(a)(2), 416.945(a)(1).

"substantial gainful activity." (R. at 20). Thus, under 20 C.F.R. § 416.965, Plaintiff had no "past relevant work" to which to return. (R. at 25). Because Plaintiff had no past relevant work, transferability of job skills was not an issue. (R. at 25). The ALJ stated that she was not "impressed with the inconsistent evidence between medical providers and with the conservative treatment from a durational disability perspective." (R. at 25). The ALJ noted that the symptoms Plaintiff reported exceeded the objective reports and objective findings noting that Plaintiff had not reported any surgeries, physical therapy, or pain clinic management in the pertinent time period. (R. at 25).

The ALJ further acknowledged that Dr. Mitchell had indicated "none" with regard to work status; however, the ALJ did not give controlling weight to the vague indication of "none" noted in the medical records. (R. at 25). Accordingly, the ALJ found that the sedentary to light work assessment indicated by Dr. Gosai was not consistent with the other reviewing physicians' evaluations. (R. at 25). For example, the ALJ stated that the limitations that appeared in the record in the course of treatment by Dr. Mitchell on May 16, 2006, June 13, 2006, and August 15, 2006 suggested Plaintiff is limited to less than sedentary work; however, this conclusion appeared to be subjective, based upon Plaintiff's self reporting rather than an objective medical assessment. (R. at 25).

At step 5, the ALJ considered Plaintiff's age, education, work experience, and residual functional capacity, along with the vocational expert's testimony, and concluded that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (R. at 26).

## IV.   ISSUES BEFORE THIS COURT

Plaintiff argues that the ALJ erred in her assessment of Plaintiff's physical impairment or combination of impairments under the listing contained in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations. Specifically, Plaintiff contends that at step four, the ALJ should not have rejected both the DDS physician's assessment and Dr. Gosai's cardiac assessment. (Docket No. 9 at 7). In addition, Plaintiff contends that the ALJ never mentioned the numerous positive clinical test results included in Dr. Mitchell's notes and cited no contrary opinion evidence to support her general findings. (Docket No. 9 at 7). The Commissioner counters that the ALJ observed that the clinical findings and functional assessments from the other treating, consulting, and reviewing physicians are not supportive of disability durationally and the medical assessments of record are contrary to the indication of no ability to work. (Docket No.11 at 9). The Commissioner attests that not only did the ALJ agree with Dr. Mitchell that Plaintiff was incapable of performing his former heavy work duties, but she also reduced Plaintiff's work capacity even more, to a range of medium, light, and sedentary work. (Docket No.11 at 9).

Further, Plaintiff asserts that the ALJ's unsubstantiated rejection of Dr. Mitchell's opinion resulted in reliance on a hypothetical posed to the Vocational Expert which did not accurately set forth all of Plaintiff's specific work-related limitations of function as documented in the administrative record. (Docket No. 9 at 17). The Commissioner argues that the ALJ could determine that Plaintiff had the residual functional capacity to perform light work, and that her hypothetical question was appropriate. (Docket No.11 at 11). Plaintiff argues, however, that "the ALJ essentially cancelled out all of the evidence except for the clinical findings of Dr. Mitchell, which she *never* discussed." (Docket No.9 at 16)(emphasis in original). Plaintiff asserts that the ALJ's analysis is clearly baseless, requiring remand for consideration of Dr. Mitchell's clinical

findings. (Docket No.9 at 16).

## V.    DISCUSSION

The Social Security Administration has clear regulations that provide for the sequential evaluation of disability. *See* 20 C.F.R. §§ 404.1520, 416.920; *Ray v. Astrue*, Civ. A. No. 07-4378, 2009 U.S. Dist. LEXIS 1256, at *22-23 (E.D. Pa. Jan. 7, 2009)(citing *Mason v. Shalala*, 994 F.2d 1058, 1063 (3d Cir. 1993)). Under this five-step evaluation process, the Commissioner considers, in sequence, whether a claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that meets or equals the requirements of a listed impairment; (4) could return to his past relevant work;[11] and (5) if not, whether he could perform other work in the national economy. If the Commissioner can conclusively find that a claimant is disabled or not disabled at any point in the sequence, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). At step five of the evaluation process, the Commissioner only has to establish that there is "other work" that the claimant can perform. *See* 20 C.F.R. § 416.920(f). This burden is met by showing that there are one or more jobs in significant numbers in the national economy which the claimant can perform. *See* 20 C.F.R. § 416.966(b).

### A.    The ALJ erred in her evaluation of the medical evidence and did not provide appropriate analysis to support her general findings.

Plaintiff argues that the ALJ incorrectly found that the medical evidence was unsupportive of the pain level to which Plaintiff testified. (Docket No. 9 at 7). The findings of

---

[11] "Past relevant work" is defined at 20 C.F.R.§§ 404.1565 and 416.965 as being work performed within the last 15 years or 15 years prior to the date that disability was established. The work must have lasted long enough for the claimant to learn to perform the job and meet the definition of substantial gainful activity. *Id.*

the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C.A § 405(g); *see also Johnson v. Comm'r of Social Sec.*, 529 F.3d 198, 200 (3d Cir. 2008).

Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003)(quoting *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981)(quotation omitted)); *see also Johnson*, 529 F.3d at 200. Here, for the reasons discussed below, the Court finds that the ALJ's findings regarding Plaintiff's limitations are not supported by substantial evidence making the fact finding inconclusive.

Plaintiff argues that the ALJ erred in discounting Dr. Mitchell's testimony as to Plaintiff's inability to work and in disregarding orthopedic test results has merit. Plaintiff further contends that the ALJ rejected Dr. Mitchell's opinion with a blanket statement that it was inconsistent with other physicians. (Docket No. 9 at 7). First, the Court notes that while the ALJ was required to consider all of the evidence in the record, she was not required to reference every single treatment note in the record. *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001). Moreover, it is the province of the ALJ to resolve conflicts in the evidence and to be the ultimate finder of fact as to issues of credibility. *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985). Nevertheless, the ALJ's decision "must contain specific reasons for the finding of credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Social Security Ruling 96-7p, 61 Fed. Reg. 34483, 34486 (1996). In *Mason*, *supra*, the United States Court of Appeals for the Third Circuit explained that "[a]n ALJ must give serious consideration to a claimant's subjective

complaints of pain, even where those complaints are not supported by objective evidence." 994 F.2d at1067. The court went on to state that "[w]hile there must be objective evidence of some condition that could reasonably produce pain, there need not be objective evidence of the pain itself."*Id.* (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984)).

The ALJ found Plaintiff to be suffering from the "severe"[12] impairments of cardiovascular disease with some stenosis and history of hypertension, spondylotic changes at L5-S1 with diminished disc space, bony spurs and disc desiccation changes with mild to moderate disc bulge without compression of the thecal sac or spinal stenosis, bilateral carpal tunnel and ulnar nerve entrapment. (R. at 20). However, at step three, the ALJ concluded that Plaintiff's "severe" impairments did not meet any medical equivalent of the impairments presumed severe enough to render a person disabled. (R. at 21).

Next, Plaintiff argues that the ALJ improperly rejected the opinions of his treating physicians. (Docket No. 9 at 7). The law governing the Commissioner's consideration of a treating physician's opinion is clearly established. If "a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

---

[12]

A "severe" impairment is an impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). Basic work activities constitute the abilities and aptitudes necessary to do most jobs, such as:
(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;
(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment;
(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting.
20 C.F.R. §419.920(c).

substantial evidence in [the claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." Social Security Ruling 96-2p, 61 Fed. Reg. 34490, 34491 (1996); *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). The ALJ must accord great weight to the reports of treating physicians, "especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Morales*, 225 F.3d at 317. "When a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999). If the ALJ determines that a treating physician's opinion is outweighed by conflicting medial evidence, he or she may reject that opinion. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d. Cir. 1991). Whenever the ALJ's decision is not fully favorable to the claimant, the opinion of the ALJ "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Social Security Ruling 96-2p, 61 Fed. Reg. 34490, 34492 (1996).

In her analysis, the ALJ did not review the evidence in rejecting the findings contained in the medical records of Dr. Mitchell and Dr. Gosai; thus, her fact finding is not conclusive. The ALJ referred to Dr. Mitchell's notes, reflecting treatment on May 16, 2006, June 13, 2006, and August 15, 2006. (R. at 25). The ALJ also refers to the vague indication of "none" in Dr. Mitchell's notes and that he prescribed Plaintiff's pain medication and treated him for about one

year. (R. at 24). The ALJ rejected Dr. Mitchell's opinion that Plaintiff was unable to work as result of his pain, which was documented in his medial records. (R. at 24). In support, the ALJ determined that Dr. Mitchell's opinion is not consistent with the clinical findings and functional assessments from the other treating, consulting and reviewing physicians. (R. at 25). The ALJ failed to acknowledge the numerous clinical test results contained in Dr. Mitchell's records and did not provide record support for rejecting this evidence.

The ALJ also rejected the other record medical evidence consisting of Dr. Gosai's opinion, who provided a functional assessment of sedentary work from a cardiac standpoint. (R. at 24). Dr. Gosai's medial examination reveals that Plaintiff cannot lift more than ten (10) pounds.[13] (Docket No. 6 at 310). The ALJ noted Plaintiff's limitations that appear in the record suggesting that Plaintiff was limited to less than sedentary work, but had the reported ability to walk, sit, stand, and lift. (R. at 25).

In rejecting Dr. Gosai's opinion, the ALJ relied on Dr. Gosai's "examination findings," as well as the findings of Plaintiff's other treating physicians. (R. at 25). This analysis is flawed because it fails to explain how the examination findings translated into functional capacities. Evidence is lacking of Plaintiff's functional capacities which contradicts the assessment provided by Dr. Gosai. In order to reject the findings of Dr. Gosai, the ALJ was required to refer to *specific* contradicting medical evidence. *Rivera v. Sullivan*, 923 F.2d 964, 968 (2d Cir. 1991).

---

[13]

"(b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b). Dr. Gosai's opinion is that Plaintiff cannot lift more than ten pounds.

She was not free to disregard Dr. Gosai's opinion in the *absence* of such contradictory evidence. *Mason*, 994 F.2d at1066-67 (emphasis added); *see also Brownawell v. Comm'r of Social Sec.*, Civ. A. No. 07-4405, 2008 U.S. App. LEXIS 24826 (3d Cir. Dec. 9, 2008)(holding that ALJ's decision to reject two examining doctors' opinions was in error because it was not supported by substantial evidence.).

The Court does not mean to imply that the ALJ was required to accept Dr. Gosai's assessment in its entirety. The United States Court of Appeals for the Third Circuit has acknowledged that it is the Commissioner's prerogative to discount "internally contradictory evidence." *Jones*, 954 F.2d at 129 ("In light of such conflicting and internally contradictory evidence, the ALJ correctly determined that the opinions of Jones's [sic] treating physicians were not controlling."). In this case, the ALJ appears to have viewed Dr. Gosai's opinion as inconsistent with that of the reviewing physician. (R. at 25). The Court does not understand how the ALJ determined that Plaintiff's residual functional capacity assessment is that of "a range of light work." (R. at 25). "Residual functional capacity is defined as that which an individual is still able to do despite the *limitations* caused by his or her *impairments*." *Pearson v. Barnhart*, 380 F.Supp.2d 496, 505 (D.N.J. 2005)(emphases added). While the treatment notes relied upon by the ALJ may shed some light on the nature of Plaintiff's *impairments*, they do not alone build an adequate bridge to her opinion on functional *limitations*.

Further, although the regulations provide for consultative medical examinations to make such assessments, *see* 20 C.F.R. § 416.919, there is no indication in the record that this occurred here. A consultative examination is sometimes needed where the evidence as a whole, both medical and nonmedical, is insufficient to support a determination as to disability or

nondisability.  20 C.F.R. § 416.919a(b).  In many instances, a consulting physician may add impartiality and expertise in disability matters that a treating physician lacks.  *Smith v. Bowen*, 664 F.Supp. 1165, 1169 (N.D.Ill. 1987).  If the ALJ was unpersuaded by Dr.  Gosai's assessments or Dr. Mitchell's orthopedic limitations, she could have sought another opinion as to Plaintiff's functional capacities.  In fact, the ALJ did not even consider the findings of Dr. Mitchell regarding Plaintiff's orthopedic limitations.  Having chosen not to do a separate consultative examination while failing to assess Dr. Mitchell's reports, she was not free to reject Dr. Gosai's uncontradicted opinion.  *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988)("The Secretary cannot reject those medical determinations simply by having the administrative law judge make a different medical judgment.  Rather, the medical judgment of a treating physician can be rejected only on the basis of contradictory medical evidence.").  Additionally, in this Court's estimation, the record before the ALJ was deficient regarding Plaintiff's functional limitations and the effect of his heart condition.

Once the ALJ determined that a medical impairment exists that could reasonably cause Plaintiff's alleged symptoms, she was then required to "evaluate the intensity and persistence of the pain" and the extent to which Plaintiff "is accurately stating the degree of pain or the extent to which he or she is disabled by it." *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999). Certainly, a credibility determination made by the ALJ is entitled to great deference by the district court. *Reefer*, 326 F.3d at 380. However, this determination must "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7;

*see also Lang v. Barnhart*, Civ. A. No. 05-1497, 2006 WL 3858579, at *10 (W.D. Pa. Dec. 6, 2006). Where a claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence. *Williams v. Sullivan*, 970 F.2d 1178, 1184-85 (3d Cir. 1992).

In the instant case, when comparing Plaintiff's testimony with the objective medical evidence, the ALJ found that while Plaintiff's medically determinable impairments could reasonably produce the alleged symptoms, Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible and were inconsistent with the totality of the evidence. (R. at 23). The ALJ chose not to credit Plaintiff's complaints of disabling pain and severe limitations for multiple reasons. Her reasons are as follows: (1) these allegations were inconsistent with Plaintiff's medical records[14] (R. at 23); (2) Plaintiff had positive findings for carpal tunnel, but little noted for any functional deficit (R. at 23); (3) Plaintiff has a history of significant drinking and smoking, but these are not noted to be medical issues (R. at 23); (4) Plaintiff had back pain with a history of "disc herniation" and spinal stenosis but with no radicular symptoms[15] (R. at 24); (5) Plaintiff's EMG and NCS testing underscored the lack of significant musculoskeletal findings for any neuropathy or

---

[14]

For example, the ALJ referenced Dr. Park's medical notes indicating Plaintiff was in no acute distress with good range of motion, intact reflexes other than at the ankles and he had an unremarkable sensory exam and normal motor power. (R. at 24). Also, the ALJ cited Dr. Rasefske's office notes stating Plaintiff was capable of "medium work" and the ALJ cited Dr. Gosai's suggestion that Plaintiff "was limited to a range of light and sedentary activity with occasional postural movements." (R. at 24).

[15]

Radicular symptoms are symptoms relating to a radicle, which is a rootlet or structure resembling one. Stedman's Medical Dictionary 1621-22 (28th ed. 2006).

radiculopathy[16] (R. at 24); and (6) the heart abnormalities of record appeared rather mild from a functional perspective based upon the medical evidence of record. (R. at 24). These reasons, as put forth by the ALJ, do not amount to substantial evidence supporting the determination that Plaintiff's subjective complaints were not fully credible.

Under the applicable regulations, a plaintiff's daily activities are a valid factor to be considered by the ALJ when conducting an inquiry as to the reliability of the claimant's subjective complaints. 20 C.F.R. §§404.1529(c)(3), 416.929(c)(3). Inconsistencies in a claimant's testimony or daily activities permit an ALJ to conclude that some or all of the claimant's testimony about his limitations or symptoms is not fully credible. *See Burns v. Barnhart*, 312 F.3d 113, 129-130 (3d Cir. 2002). Even "limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible - the ALJ can choose to credit portions of the existing evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).

The ALJ determined that Plaintiff's self-reported daily living activities were not limiting. (R. at 22). The ALJ cited that Plaintiff is independent in his personal care and adept as using his hands for fine and gross manipulation. (R. at 22). Plaintiff reported that he does light housekeeping, fishing, light home maintenance and says that he rests about 20 minutes every 45 minutes. (R. at 22). Plaintiff also reported that he sometimes uses a cane to walk and that he is able to shower without resting. (R. at 23). The ALJ noted that Plaintiff reported the ability to drive up to one hour, and that he can walk for 20 to 30 minutes at a time. (R. at 23). However,

---

16

Radiculopathy is a disorder in the spinal nerve roots. Stedman's Medical Dictionary 1622 (28th ed. 2006).

a finding of nondisability cannot be sustained solely on the ground that a claimant is capable of performing light housework. *Swope v. Barnhart*, 436 F.3d 1023, 1026, n. 4 (8th Cir. 2006); *Hogg v. Shalala*, 75 F.3d 366, 369 (8th Cir. 1996). While the ALJ was free to consider whether Plaintiff's daily activities were inconsistent with his complaints of disabling pain, she was not free to reject such complaints *solely* on the basis of nonmedical evidence. *Williams v. Apfel*, 98 F.Supp.2d 625, 633-634 (E.D.Pa. 2000). Consequently, the Court finds the ALJ's rationale to be inadequately explained and supported.

> **B.**    **Substantial evidence does not support the ALJ's hypothetical question posed to the Vocational Expert based on the assessment of Plaintiff's residual functional capacity.**

The Plaintiff's final argument centers around the ALJ's assessment of Plaintiff's residual functional capacity (RFC) and the hypothetical question posed at Plaintiff's hearing to a Vocational Expert ("VE") based on this assessment. (Docket No. 9 at 17). As noted above, the ALJ made the following RFC assessment: "[Plaintiff] has the residual functional capacity to perform light work with no more than occasional postural movements except with no climbing of ropes, ladders, or scaffolds, with avoidance of hazards such as dangerous moving machinery or unprotected heights, with avoidance of extremes of cold, with the ability to sit or stand every 15 to 20 minutes, and with the ability to be off tasks up to 10 percent of the work period and tardy or absent up to two days per month." (R. at 21).

If an impairment causes a limitation, it must be reflected in the residual functional capacity assessment. *See Pearson,* 380 F.Supp.2d at 505 ("Residual functional capacity is defined as that which an individual is still able to do despite the *limitations* caused by his or her *impairments.*")(emphases added). At the fifth step of the sequential evaluation process, the

burden is on the Commissioner to establish the existence of work in the national economy that the claimant is capable of performing. *Allen v. Barnhart*, 417 F.3d 396, 401, n. 2 (3d Cir. 2005). In order for a vocational expert's testimony to constitute "substantial evidence" that such work exists, the ALJ's hypothetical question must adequately convey all of the claimant's limitation-causing impairments. *Ramirez v. Barnhart*, 372 F.3d 546, 552-55 (3d Cir. 2004). There is no requirement that an ALJ incorporate every alleged limitation into his or her hypothetical question. *Rutherford*, 399 F.3d at 554. However, where a limitation is credibly established by the medical evidence in the record, it must be referenced. Otherwise, the hypothetical question is deficient, and the VE's answer cannot constitute "substantial evidence" of the existence of jobs compatible with the claimant's vocational and residual functional capacity assessments. *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987), *superseded by statute on other grounds*, 20 C.F.R. § 404.983, *as recognized in Thompson v. Astrue*, 583 F.Supp.2d 472 (S.D.N.Y. 2008).

Based on her assessment described above, the ALJ asked the VE whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual function capacity. (R. at 26). The VE responded that given all of these factors, the individual would be able to perform the requirements of light work in representative jobs such as mail clerk, with 830 jobs regionally and 82,490 nationally and sewing machine operator, with 267 jobs regionally and 188,906 nationally. (R. at 26). Representative sedentary work, including document preparation jobs at 499 regionally and 62,756 nationally, and table worker jobs at 101 jobs regionally and 14,749 nationally, was also advanced. (R. at 26).

Plaintiff first argues that the RFC assessment is not supported by substantial evidence.

(Docket No. 9 at 17). Specifically, Plaintiff argues that the ALJ erred by misconstruing Dr. Mitchell's medical reports, erred in discounting Dr. Gosai's medical evaluation, and erred by finding that Plaintiff's testimony was not entirely credible. *Id.* For the same reasons as explained above in this Court previous finding that such argument has merit because the ALJ did not support her finding with substantial evidence, the Court agrees.

Plaintiff next argues that the ALJ erred in formulating her hypothetical question. (Docket No. 9 at 17). The Court agrees for the following reasons. First, the ALJ asked the VE base his assessment on a hypothetical person who did not have all of the limitations Plaintiff alleged in his testimony during the hearing. (R. at 26). Second, as the ALJ rejected Dr. Gosai's opinion, the hypothetical question posed to the VE did not set forth all of Plaintiff's specific work-related limitations of function. Accordingly, the ALJ's finding that Plaintiff could perform several alternative occupations in the economy as identified by the vocational expert is not supported by substantial evidence.

## VI.    CONCLUSION

Because the Commissioner's residual functional capacity assessment is not "supported by substantial evidence," the Court vacates the administrative decision and remands this case for further proceedings. A reliable residual functional capacity assessment, of course, must account for all of a claimant's credibly established limitations. *Rutherford*, 399 F.3d at 554. At the fifth step of the sequential evaluation process, the burden of proof is on the Commissioner, *not* on the claimant. *Allen*, 417 F.3d at 401, n. 2. The Commissioner cannot establish that jobs exist in the national economy which Plaintiff can perform without first making a reliable determination as to his residual functional capacity. In making such a determination, the Commissioner must

adequately explain the weight given to the opinions expressed by all treating, examining and nonexamining physicians. *Alejandro v. Barnhart*, 291 F.Supp.2d 497, 508 (S.D.Tex. 2003). At a minimum, the Commissioner's discussion of the evidence must be sufficiently detailed to provide a court with an opportunity to conduct meaningful judicial review in accordance with § 405(g). Based upon the evidence of record, the parties' cross motions and briefs outlining their arguments, and the supporting documents filed in support and in opposition, this Court concludes that substantial evidence does not support the ALJ's findings that Plaintiff was not statutorily disabled as of April 4, 1998. Accordingly, the Court **DENIES** the Commissioner's Motion for Summary Judgment [10], and **GRANTS, in part and DENIES, in part** Plaintiff's Motion for Summary Judgment [8]. Plaintiff's Motion for Summary Judgment [8] is denied to the extent that it seeks an award of benefits and it is granted to the extent that it seeks a vacation of the administrative decision currently under review and a remand for further proceedings. The Court remands this case for further administrative proceedings consistent with this opinion. Additionally, the Court strongly recommends that as part of the proceedings on remand, a consultative examination be completed of the Plaintiff in order to more fully supplement the record evidence as to his functional limitations. An appropriate order follows.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: March 12, 2009.

cc/ecf: All counsel of record.